FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 18, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARTIN VILLANUEVA, GABELO TLATELPA, and JOHN DOE, Trustee,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART INC., a foreign profit corporation, JAKE CARLSTROM, and AARON RODRIGUEZ,<br><br>Defendants. | No.   1:18-cv-03125-SMJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument,[1] are Defendants Wal-Mart Inc. ("Walmart"), Jake Carlstrom, and Andrew Rodriguez's Motion for Summary Judgment on Villanueva's Claims, ECF No. 120, Defendants' Motion for Summary Judgment on Tlatelpa's Claims, ECF No. 122, Plaintiff Martin Villanueva's Motion for Summary Judgment, ECF No. 126, and Plaintiff Gabelo Tlatelpa's Motion for Summary Judgment, ECF No. 127. Defendants seek summary judgment on each of

---

[1] Though Plaintiffs requested hearing with oral argument on Defendants' motions, the Court, having reviewed the record, the parties' briefs, and the relevant legal authorities, is fully informed and finds the motions appropriate for decision without oral argument. *See* LCivR 7(i)(3)(B)(iii).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 1

Plaintiffs' nine claims related to their respective termination from employment with Walmart. ECF Nos. 120, 122. Plaintiffs seek summary judgment on their claims for discrimination on the basis of disability under the Washington Law Against Discrimination (WLAD) and the Washington Industrial Insurance Act (IIA). ECF Nos. 126, 127. Plaintiff Tlatelpa also seeks summary judgment on his claim for failure to accommodate. ECF No. 127.

Having reviewed the motions and the file in this matter, the Court is fully informed. For the reasons discussed below, the Court finds genuine disputes of material fact exist with regard to Plaintiffs' claims for disability discrimination and wrongful termination in violation of the IIA, and Plaintiff Tlatelpa's failure to accommodate claim, and therefore summary judgment is inappropriate on those claims. However, the Court finds Defendants are entitled to judgment as a matter of law on Plaintiffs' hostile work environment claims.

## BACKGROUND

In 2017, Defendants Villanueva and Tlatelpa both worked in Walmart's Grandview, Washington distribution center, sustained injuries on the job, filed workers' compensation claims, and were discharged after reaching the fourth and final step of Walmart's "accountability system." ECF No. 78 at 3; ECF No. 120 at 5–6; ECF No. 122 at 5–7; ECF No. 126 at 2–4; ECF No. 127 at 2–5.

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 2

## A.    Walmart's Accountability System

Defendants assert Walmart employs a "progressive accountability system whereby employees . . . are disciplined to improve their job performance or behavior to meet Walmart's expectations." ECF No. 120 at 2–3; ECF No. 122 at 2–3. Plaintiffs' and Defendants' representation of the exact procedures under this system differ. Defendants assert an incident involving an employee that results in a formal reprimand would be recorded in the employee's personnel file as an "occurrence until the issue reaches a step level." ECF No. 120 at 3; ECF No. 122 at 3. Plaintiffs assert that this system also permitted recording certain incidents as "events," which were less severe than an occurrence and that two events would result in a recorded occurrence. ECF No. 126 at 6; ECF No. 127 at 5.

Discipline under the accountability system included four steps; reaching the fourth step would result in an employee's termination. ECF No. 120 at 3; ECF No. 122 at 3. An employee's status within the accountability system was recorded under two categories—Section A related to safety, procedure, quality, productivity, or other topics, and Section B related to attendance and punctuality. ECF No. 120 at 3; ECF No. 122 at 3. Employees could be at Step One or Step Two in either category and incur an additional step without termination, but once the employee reached Step Three in either category, any further step progression in either category would result in progression to Step Four and termination. ECF No. 120

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 3

at 3–4; ECF No. 122 at 3–4.

**B.    Villanueva's Employment, Injury, and Termination**

Plaintiff Villanueva began working for Walmart on November 19, 2007 and was terminated on September 12, 2017. ECF No. 120 at 5. On May 30, 2017, Villanueva was putting away a pallet of water when the cases of water fell. ECF No. 120 at 5; ECF No. 126 at 3. He and a co-worker were putting the cases back on the pallet when the cases of water fell again and struck Villanueva. ECF No. 120 at 3; ECF No. 126 at 3. Villanueva sustained injuries to his shoulder and knee. ECF No. 126 at 3. He filed a workers' compensation claim related to the incident. ECF No. 120 at 6. Defendant asserts Villanueva's injury was a result of his violation of safety procedures because he placed himself in an unsafe "pinch point" between the rack and the pallet and was therefore unable to avoid being struck by the falling cases. ECF No. 120 at 5–6. Plaintiff Villanueva asserts that he did not place himself in a pinch point and that he had previously used the same method to pick up fallen merchandise without reprimand. ECF No. 126 at 4.

Walmart investigated this incident and found Villanueva's conduct reckless, meriting an immediate escalation to Step Three. ECF No. 120 at 6. Villanueva argues the decision to find his conduct reckless, rather than careless meriting only an escalation to Step One, was part of Defendants' practice of targeting workers who had been injured in the course of employment and who filed workers'

compensation claims. *See* ECF No. 126 at 2–3. Villanueva also argues Walmart failed to communicate the finding of recklessness within the time required by Walmart's policies and that after the incident, Walmart "was looking for any excuse to fire him." *Id.* On September 7, 2017, Walmart asserts Villanueva placed a pallet in the wrong location, which resulted in a progression to Step Four and Villanueva's termination. ECF No. 120 at 6–7. Villanueva asserts he challenged the claim that he had misplaced the pallet, but his challenge was not addressed. ECF No. 126 at 4–5.

**C.    Plaintiff Tlatelpa's Employment, Injury, and Termination**

Plaintiff Tlatelpa began working for Walmart on or about November 28, 2016 and was terminated on September 14, 2017. ECF No. 122 at 5. On May 25, 2017, Tlatelpa was injured while operating power equipment and filed a workers' compensation claim. ECF No. 122 at 5–6; ECF No. 127 at 2. Tlatelpa had already received two step-increases, once for taking too long for lunch on March 16, 2017, and once for a fifth incident of failing to make productivity goals in April 2017. ECF No. 122 at 5. Walmart investigated the May 25, 2017 incident resulting in Tlatelpa's injury, determined he had engaged in reckless behavior, and progressed Tlatelpa's status from Step Two to Step Three. *Id.* at 5–6.

Defendants assert Tlatelpa failed to timely call Walmart to report his absence on August 31, 2017, resulting in a progression to Step Four and Plaintiff Tlatelpa's termination. *Id.* at 6. Tlatelpa asserts that after his injury, he was repeatedly assessed

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 5

"occurrences" related to missing work for doctors' appointments and otherwise stemming from the recommended treatment of his injuries, despite Walmart being made aware of these appointments and recommendations in advance. ECF No. 127 at 4–5. Tlatelpa asserts these reported occurrences in conjunction with his August 31, 2017 late call resulted in his progression to Step Four and termination. *Id.* at 5.

**D.    Relevant Procedural History**

Defendants filed a motion for summary judgment pertaining to each Plaintiff, asserting each Plaintiff's nine claims fail as a matter of law. ECF Nos. 120, 122. In response to the Defendants' motions, Plaintiffs voluntarily dismissed their claims under the Family Medical Leave Act (FMLA), under the Washington Family Leave Act (WFLA), for intentional and negligent infliction of emotional distress, and for breach of contract. ECF No. 129 at 2; ECF No. 130 at 2. Plaintiffs each filed a motion for summary judgment asserting judgment as a matter of law is appropriate on their claims for disability discrimination under the WLAD and the Washington IIA. ECF Nos. 126, 127. Plaintiff Tlatelpa also seeks summary judgment on his claim for failure to accommodate. ECF No. 127.

**LEGAL STANDARD**

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 6

a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Thus, the Court must accept the nonmoving party's evidence as true and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255. The Court may not assess credibility or weigh evidence. *See id.* Nevertheless, the nonmoving party may not rest upon the mere allegations or denials of its pleading but must instead set forth specific facts, and point to substantial probative evidence, tending to support its case and showing a genuine issue requires resolution by the finder of fact. *See Anderson*, 477 U.S. at 248–49.

## DISCUSSION

**A.    New claims raised in motions for summary judgment and new facts and arguments in overlength reply briefs**

As an initial matter, the Court has not considered Plaintiffs' arguments raised for the first time in their motions for summary judgment that they are entitled to judgment as a matter of law on claims for disparate impact in violation of the

WLAD. ECF No. 126 at 12–14; ECF No. 127 at 13–14. The First Amended Complaint makes no mention of a claim for discrimination based on disparate impact, nor does it include allegations that would lead to a belief that Plaintiffs intended to bring such a claim. To establish a prima facie case of disparate impact, a plaintiff must show (1) a facially neutral employment practice (2) that falls more harshly on a protected class. *Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 204 (Wash. 2014) (citing *Oliver v. Pac. Nw. Bell Tel. Co.*, 724 P.2d 1003, 1006 (Wash. 1986)). However, the facts described in the First Amended Complaint do not include a facially neutral practice that falls more harshly on a protected class; it focuses on Defendants' intentionally discriminatory use of policies to target certain employees. ECF No. 78 at 3–4. Plaintiffs also only assert a claim based on Defendants targeting Plaintiffs. *Id.* at 5. The deadline to amend the First Amended Complaint has passed and Plaintiffs have not sought leave to add any claims. As such, the Court disregards Plaintiffs' arguments related to disparate impact.

Further, Plaintiffs' reply briefs in support of their motions for summary judgment were approximately twenty pages in length. ECF Nos. 155, 156. The Court's Local Civil Rules limit all reply memoranda to ten pages in length. LCivR 7(f)(3). Moreover, in these replies, Plaintiffs attempt to present new facts and arguments that were not presented as a part of the original motion or raised in

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 8

Defendants' responses.[2] *See* ECF Nos. 155, 156. "It is well established that new arguments and evidence presented for the first time in a Reply are waived." *Docusign, Inc. v. Sertifi, Inc.*, 468 F.Supp.2d 1305, 1307 (W.D. Wash. 2006) (citing *U.S. v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000). The Court has therefore not considered the new evidence and arguments raised in the reply briefs and has only considered the first ten pages of each brief.[3]

**B.    Voluntarily dismissed claims**

Plaintiffs seek voluntary dismissal of their claims under the FMLA, under the WFLA, for intentional and negligent infliction of emotional distress, and for breach of contract. ECF No. 129 at 2; ECF No. 130 at 2. Plaintiff Villanueva also

---

[2] In fact, it would appear some of the evidence Plaintiffs attempt to argue was not disclosed to Defendants as it was only recently discovered by Plaintiffs. *See* ECF No. 155 (discussing evidence found on March 1, 2020). Defendants filed a Motion to Strike Plaintiffs' replies in Support of Their Motions for Summary Judgment, ECF No. 160, which confirms that this evidence had not been disclosed to Defendants until the reply brief was filed. ECF No. 160 at 4.

[3] Defendants filed a Motion to Strike Plaintiffs' replies, arguing that Plaintiffs' replies were overlength, that Plaintiffs' replies raised previously undisclosed evidence, and that Plaintiffs' replies mischaracterized Defendants' evidence. ECF No. 160. Plaintiffs then filed a Motion for Leave Regarding Page Count, asking the Court to consider only one reply as though filed by both Plaintiffs or, alternatively, to only consider the first ten pages of each brief. ECF No. 164. Regarding the third argument, the Court understands Plaintiffs' characterization of Defendants' evidence as a competing interpretation of the evidence, which is not inappropriate. Because the Court has not considered the new arguments or evidence presented in the replies and has only considered the first ten pages of each reply, these motions are denied as moot.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT – 9

represents that he "is not bringing a claim for failure to accommodate," and that only Plaintiff Tlatelpa is asserting this claim. ECF No. 129 at 16. But as to the failure to accommodate claim, the First Amended Complaint includes both Plaintiff Villanueva and Plaintiff Tlatelpa. ECF No. 78 at 7 ("Defendants violated Washington State Law against discrimination by failing to accommodate *Plaintiffs'* medical conditions . . .") (emphasis added). As such, the Court understands that Plaintiff Villanueva is seeking voluntary dismissal of his claim for failure to accommodate, and Defendants similarly interpret this as Plaintiff Villanueva's intent to voluntarily dismiss this claim. *See* ECF No. 146 at 2. Defendants do not object to dismissal of these claims but rather describe dismissal as appropriate. ECF No. 146 at 2; ECF No. 148 at 2. As such, the Court will grant voluntary dismissal of these claims and Defendants' motions for summary judgment on these claims are denied as moot.

## C.    Discrimination and hostile work environment

Defendants move for summary judgment on each of Plaintiffs' respective claims of disability discrimination and hostile work environment under WLAD. Plaintiffs each seek summary judgment on their claims for disability discrimination under WLAD and oppose summary judgment on their claims for hostile work environment.

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT – 10

### 1.    There is a dispute of material fact related to Plaintiffs' claims for disability discrimination

Plaintiffs assert Defendants violated the WLAD, Wash. Rev. Code § 49.60, et seq., by taking adverse employment actions, retaliating against Plaintiffs, and ultimately terminating them because of their disability or industrial injury. ECF No. 78 at 5. Washington law prohibits employers from discriminating against any person in the conditions of employment or discharging any person because of disability. Wash. Rev. Code §§ 49.60.180(2), (3). However, "smoking gun" evidence of discriminatory motive is rare because proof resides in the employer's mental processes and savvy employers "infrequently announce their bad motives orally or in writing." *Hill v. BCTI Income Fund-I*, 23 P.3d 440, 445 (Wash. 2001), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464 (Wash. 2017) (citations omitted). Thus, to ensure plaintiffs are not unfairly denied their day in court, Washington courts utilize the burden-shifting framework announced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to "'compensate for the fact that direct evidence of intentional discrimination is hard to come by.'" *Hill*, 23 P.3d at 445 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989)).

Under this framework, an employee claiming discrimination or retaliation due to disability must first establish a prima facie case by establishing the elements

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 11

of the particular claim. *See Brownfield v. City of Yakima*, 316 P.3d 520, 533 (Wash. Ct. App. 2013) (quoting *Swinford v. Russ Dunmire Oldsmobile, Inc.*, 918 P.2d 186, 193 (Wash. Ct. App. 1996)). To establish a prima facie case for discrimination due to disability, the employee must show he was "[(1)] disabled, [(2)] subject to an adverse employment action, [(3)] doing satisfactory work, and [(4)] discharged under circumstances that raise a reasonable inference of unlawful discrimination." *Brownfield*, 316 P.3d at 533 (Wash. Ct. App. 2013) (alterations in original) (quoting *Callahan v. Walla Walla Hous. Auth.*, 110 P.3d 782, 786 (Wash. Ct. App. 2005)).

Once the employee has established a prima facie case, the burden "shifts to the employer to present evidence suggesting a nondiscriminatory reason for [the termination]." *Brownfield*, 316 P.3d at 533 (alterations in original) (quoting *Swinford*, 918 P.2d at 193). "If the employer sustains its burden, the employee must then demonstrate that the reasons given by the employer are pretext for discrimination." *Swinford*, 918 P.2d at 193. "A plaintiff cannot create a pretext issue without some evidence that the articulated reason for the employment decision is unworthy of belief." *Kuyper v. Dep't of Wildlife*, 904 P.2d 793, 797 (Wash. Ct. App. 1995). "To do this, a plaintiff must show, for example, that the reason has no basis in fact, it was not really a motivating factor for the decision, it lacks a temporal connection to the decision or was not a motivating factor in employment decisions for other employees in the same circumstances." *Id.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 12

In their motion for summary judgment, Defendants focus on whether, assuming Plaintiffs can establish a prima facie case for disability discrimination, Plaintiffs can show that Walmart's proffered reasons for discharging each Plaintiff were pretext for discrimination. ECF No. 120 at 9–10; ECF No. 122 at 11. Because Defendants' arguments focus on this stage of the process, the Court will assume, without deciding, that Plaintiffs can establish a prima facie case and consider whether Plaintiffs have submitted sufficient evidence to show Defendants' justifications for terminating Plaintiffs were pretextual.

Walmart has presented evidence that Plaintiff Villanueva was terminated for "misconduct with coachings," and specifically that Villanueva was elevated to Step Three as a result of reckless behavior and that he was then elevated to Step Four as a result of incorrectly placing a pallet. ECF No. 125 at 3–4, 15–16. Walmart has also presented evidence that Plaintiff Tlatelpa was terminated for "misconduct with coachings," and specifically that Tlatelpa was elevated to Step Three as a result of reckless behavior and that he was elevated to Step Four for failing to timely call to report his absence from a scheduled workday. ECF No. 125 at 3, 30–31. Because Defendants have presented evidence of a nondiscriminatory reason for termination, Plaintiffs must "demonstrate that the reasons given by the employer are pretext for discrimination." *Swinford*, 918 P.2d at 193.

Plaintiff Villanueva argues that Walmart's finding of recklessness, its

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 13

decision to elevate him to Step Three, and its determination that he incorrectly placed a pallet are not worthy of belief. Specifically, Villanueva has presented declarations indicating that for ten years, he had consistently picked up fallen merchandise using the same method he used on May 30, 2017, that this method was not out of the ordinary for him or his coworkers, and that on May 30, 2017, contrary to Walmart's finding, he was not in a pinch point. ECF No. 126-3 at 3; ECF No. 131-1 at 3–4. Villanueva also submitted a sworn declaration concerning the alleged incorrect placement of the pallet, stating that he put the pallet in the correct slot and scanned it, that his device would have alerted if the scanned pallet was in the wrong slot and would not have allowed him to complete the process, that everyone in the warehouse has access to move the pallets, and that Walmart did not locate the misplaced pallet until days after the alleged misplacement. ECF No. 126-3 at 4; ECF No. 131-1.

Plaintiff Tlatelpa has presented evidence that Walmart's decision to elevate him to Step Three based on his accident and to elevate him to Step Four based on his late call-out were pretextual. Like Plaintiff Villanueva, Plaintiff Tlatelpa has presented evidence that on the date of his injury, he was using his equipment in the same manner as he had previously and "it had not been an issue" prior to his injury and that the machine moved as it did because of the weight of the items rather than because he was careless or reckless. ECF No. 127-2 at 3. Moreover, Tlatelpa has

presented evidence that Walmart improperly assessed negative disciplinary entries against him for absences related to his treatment, and that if Walmart had not done so, he would not have been elevated to a Step Four and discharged when he called out late on August 31, 2017. *Id.* at 5.

In reviewing Plaintiffs' evidence in support of their arguments that Defendants' explanations were pretextual, the Court finds sufficient evidence from which a rational juror could conclude either that the explanations were or that they were not pretextual. Because Defendants have put forward a legitimate, non-discriminatory reason for terminating both Plaintiffs and Plaintiffs have responded with credible evidence that these reasons were pretextual, summary judgment is not appropriate. *See Carle v. McChord Credit Union*, 827 P.2d 1070, 1077 (Wash. Ct. App. 1992) ("When all three facets of the burden of production have been met, the case must be submitted to the jury.").

### 2.    There is no dispute of material fact related to Plaintiffs' claims for hostile work environment

Plaintiffs assert that Defendants' subjected them to a hostile and abusive working environment.[4] ECF No. 78 at 6. Under Washington law, to establish a

---

[4] Plaintiffs do not identify a statutory basis for hostile work environment in the First Amended Complaint. However, Title VII of the Civil Rights Act of 1964 "protects persons on the basis of 'race, color, religion, sex, or national origin,' it does not protect persons on the basis of disability." *Dotson v. County of Kern*, 2011 WL

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 15

prima facie case for a hostile work environment claim, a plaintiff must show that (1) he or she was subjected to unwelcome hostile or abusive conduct, (2) the conduct was based on the plaintiff's protected status, (3) the conduct was sufficiently severe to affect the terms and conditions of employment and create an abusive working environment, and (4) the hostile or abusive conduct is imputable to the employer. *See Glasgow v. Georgia-Pacific Corp.*, 693 P.2d 708, 711–12 (Wash. 1985). "[I]solated or trivial manifestations of a discriminatory environment" are insufficient to state a cause of action under Washington law. *Id.* To determine whether the conduct was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment, the Court considers the totality of the circumstances, including frequency and severity of the alleged conduct, whether the conduct involved words alone or also included physical intimidation or humiliation, and whether the conduct interfered with the employee's work performance. *Adams v. Able Bldg. Supply, Inc.*, 57 P.3d 280, 283 (Wash. Ct. App. 2002) (citing *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993); *Glasgow*, 693 P.2d at 712; *MacDonald v. Korum Ford*, 80 Wn. App. 877, 885, 912 P.2d 1052 (Wash. Ct. App. 1996)).

Neither Plaintiff has made a prima facie case of a hostile work environment

902142, at *6 (E.D. Cal. Mar. 15, 2011). As such, the Court understands Plaintiffs' claim as arising from Washington law.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 16

because neither Plaintiff has shown that they were subjected to unwelcome hostile or abusive conduct that was sufficiently severe to create an abusive working environment. Plaintiff Villanueva argues that "placing injured workers at an automatic step 3 constitutes a hostile work environment," that he was "in an extremely vulnerable position," was "under stress," and that he "could tell his supervisors . . . were looking for any reason to fire him."  ECF No. 129 at 14. However, Plaintiff Villanueva does not identify any specific hostile or abusive conduct to which he was subjected, nor identify any authority holding that an employer's heightened oversight or concern for losing one's job created a hostile work environment. *Id.*

The Court cannot conclude that Plaintiff Villanueva's perception that his employers were "looking for any reason to fire him" constitutes actionable hostile or abusive conduct. *Cf. Brooks v. BPM Senior Living Co.*, 180 Wash. App. 1001, 2014 WL 1018226, at *8 (Wash. Ct. App. 2014) (affirming finding that communications that caused plaintiff concern over losing her job were not hostile, concluding the messages were upsetting because of possible job loss, not the way in which the message was communicated). Accepting Villanueva's allegations as true and drawing all reasonable inferences in his favor, he has not come forward with sufficient evidence for a rational juror to find they were subject to a sufficiently hostile work environment on the basis of his alleged disability.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 17

Plaintiff Tlatelpa identifies the following as events establishing a hostile work environment: (1) the initial refusal to allow him to see a doctor on the day of his injury; (2) the requirement that he return to Walmart for transport for treatment, (3) interference with his doctor's recommendations; (4) that, after he returned to work and his foot began to swell, Walmart refused to allow him to go to a doctor and told him if he left, "Walmart would write him up;" (5) reprimanding him the following day for leaving to see a doctor after his foot began swelling; and (6) reprimanding him for absences caused by his treatment for which he gave Walmart advance notice. ECF No. 130 at 13. However, Plaintiff Tlatelpa fails to explain how these factual allegations establish that this was hostile or abusive conduct or was sufficiently severe to affect the terms and conditions of employment and create an abusive working environment. Plaintiff Tlatelpa does not provide evidence of how this may have been intimidating or humiliating and does not identify any authority in support of finding that interfering with an employee's medical care, absent some other circumstances, constitutes hostile or abusive conduct.

The Court accepts that Plaintiff Tlatelpa may have found Defendants' conduct personally upsetting or offensive, and the described conduct is certainly both concerning and highly relevant to Tlatelpa's failure to accommodate claim. However, there is no indication that these communications under the totality of the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 18

circumstances constituted an abusive working environment. *Cf. Brooks*, 2014 WL 1018226, at *8. As such, both Plaintiffs' claims for hostile work environment fail as a matter of law and summary judgment in favor of Defendants is appropriate.

**D.    Wrongful termination and Washington Industrial Insurance Act**

Defendants move for summary judgment on Plaintiffs' claims of wrongful discharge in violation of public policy. Plaintiffs and Defendants each also move for summary judgment on Plaintiffs' claims that Defendants violated Washington State's IIA.

As a preliminary matter, Plaintiffs allegations of wrongful termination have evolved since the filing of the First Amended Complaint and it now appears Plaintiffs' claims for wrongful termination are subsumed by their claims for violation of the IIA. In the First Amended Complaint, Plaintiffs asserted that "Defendants wrongfully terminated Plaintiffs in violation of public policy by retaliating against Plaintiffs and terminating them for taking protected medical leave and for requiring medical accommodations." ECF No. 78 at 7. However, Plaintiffs have since sought voluntary dismissal of their claims for violations of the FMLA and WFLA and of Plaintiff Villanueva's claim for failure to accommodate. ECF No. 129 at 2; ECF No. 130 at 2.

Plaintiffs' arguments now focus on Defendants allegedly discharging Plaintiffs for their injuries on the job and subsequent workers' compensation claims.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 19

1  ECF No. 129 at 15–16; ECF No. 130 at 18–19; ECF No. 129-1 at 6. However, these

2  claims overlap entirely with Plaintiff's claims that, under the IIA they were entitled

3  to receive benefits for a workers' compensation injury, that they filed workers'

4  compensation claims, and that Defendants took adverse employment action against

5  them, interfered with their workers' compensation benefits, and discharged and

6  discriminated against them based on their exercise of rights protected by the IIA.

7  ECF No. 78 at 9–10. Plaintiffs' arguments on their IIA claims also focus on the

8  same action as the claims for wrongful termination in violation of public policy,

9  namely, Defendants' discharge of Plaintiffs after Plaintiffs filed workers'

10  compensation claims. ECF No. 126 at 14–15; ECF No. 127 at 14–16. As such, the

11  Court understands these as a single cause of action for wrongful termination in

12  violation of the IIA.

13      Washington recognizes the tort of wrongful discharge in violation of public

14  policy.[5] *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1089 (Wash. 1984).

15  Wrongful discharge claims under Washington law employ a similar burden shifting

16  framework as disability discrimination claims. To establish a prima facie case of

---

[5] In Washington, as in many states, unless specified, an employment contract is terminable at will by either the employee or the employer. *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1084 (Wash. 1984). Even so, a Washington employer may not rely on the terminable at will doctrine to "shield [its] action which otherwise frustrates a clear manifestation of public policy." *Id.* at 1088.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT – 20

retaliatory discharge, the employee must show three elements:

> (1)[T]hat he or she exercised the statutory right to pursue workers' benefits under RCW Title 51 or communicated to the employer an intent to do so . . . ; (2) that he or she was discharged; and (3) that there is a causal connection between the exercise of the legal right and the discharge, *i.e.*, that the employer's motivation for the discharge was the employee's exercise of or intent to exercise the statutory rights.

*Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 28–29 (Wash. 1991).[6] As to the third element of the prima facie case, "[p]roximity in time between the claim and the firing is a typical beginning point, coupled with evidence of satisfactory work performance and supervisory evaluations. Evidence of an actual pattern of retaliatory conduct is, of course, very persuasive." *Wilmot*, 821 P.2d at 29 (quoting 1 L. Larson, *Unjust Dismissal* § 6.05[5] (1988)).

If the plaintiff succeeds at this first step, the burden shifts to the employer to "articulate a legitimate nonpretextual nonretaliatory reason for the discharge." *Id.* at 29. If the employer does so, the burden shifts back to the employee to demonstrate that the employer's proffered justification was pretextual or, even if it was

---

[6] Even if Plaintiffs were able to assert these as separate claims, the legal standard for wrongful termination in violation of the IIA is identical to the standard announced in *Wilmot*, 821 P.2d. *See Anica v. Wal-Mart Stores, Inc.*, 84 P.3d 1231, 1237 (Wash. Ct. App. 2004) (applying *Wilmot* standard to claim for wrongful discharge to claim for wrongful discharge in violation of IIA).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 21

legitimate, that the employer's retaliatory motive was a "substantial or important factor motivating the discharge." *Id.* at 29, 30.

The parties do not contest that both Plaintiffs Villanueva and Tlatelpa exercised their statutory right to file workers' compensation claims or that Plaintiffs were thereafter discharged. ECF No. 121 at 3, 5; ECF No. 123 at 5; ECF No. 126-1 at 3, 4; ECF No. 127-1 at 5. Defendants argue that the following facts undermine Plaintiffs' claims: (1) the nearly four-month period between Plaintiffs' filing of a compensation claim and their termination, and (2) the fact that they were each terminated after progressing to Step Four of WalMart's accountability system. ECF No. 120 at 14–15; ECF No. 122 at 15. Defendants' second argument is more appropriately construed as rebuttal evidence showing a legitimate, non-retaliatory reason for discharging Plaintiffs.

As to the first argument, although the three-to-four-month gap may weigh against finding that Plaintiffs have made a prima facie case, the Court does not find this gap dispositive given that Plaintiffs have presented other evidence in support the causal inference. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing with approval cases holding that three-month and four-month period were insufficient to establish causation for a prima facie case where there was no evidence of causation beyond temporal proximity). Plaintiffs have submitted evidence that Plaintiff Villanueva had minimal prior history of reprimand, ECF

No. 126-1 at 2, that Plaintiffs challenged the reprimands both had received as inappropriate or retaliatory, ECF No. 131 at 3, 5–6, ECF No. 131-1 at 5, and that in Plaintiff Villanueva's ten years of employment, he had observed a pattern of injured workers being separated from Walmart, ECF No. 126-3 at 2.

Walmart describes Plaintiffs' claims of causation as "pure speculation." ECF No. 120 at 14–15; ECF No. 122 at 15. However, the issue of what weight to give evidence is a question for the trier of fact and the Court finds that at this stage, Plaintiffs have produced sufficient evidence for a reasonable trier of fact to conclude that there was a causal connection between Plaintiffs' termination and their workers' compensation claims.

Defendants also maintain Plaintiffs were terminated in accordance with Walmart's accountability system for unsatisfactory performance. ECF No. 120 at 14–15; ECF No. 122 at 15. If credited by the finder of fact, these explanations would suffice as nonretaliatory justifications for Plaintiffs' termination. Therefore, Plaintiffs bear the burden of establishing either that Defendants' explanations are pretextual or that, even if they are legitimate, Plaintiffs' filing workers' compensation claims were substantial motivating factors in their respective terminations. *Wilmot*, 821 P.2d at 28–29. As discussed above, Plaintiffs have presented evidence that Walmart's proffered justifications were pretextual, and the same evidence would support the inference of retaliation for filing workers'

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 23

1    compensation claims. Considering the evidence and drawing all reasonable

2    inferences in favor of Plaintiffs, Plaintiffs have produced competent evidence that

3    retaliation could have been a substantial factor behind their termination. As such,

4    genuine issues of material fact preclude summary judgment on these claims.

5    **E.    Failure to accommodate**

6        Defendants and Plaintiff Tlatelpa each move for summary judgment on

7    Tlatelpa's failure to accommodate claim. Tlatelpa asserts Defendants violated

8    WLAD by failing to accommodate his medical conditions. ECF No. 78 at 7.

9        To establish a prima facie case of failure to accommodate, Tlatelpa must

10    establish that (1) he had a sensory, mental, or physical impairment that substantially

11    limited a major life activity, (2) he was qualified to perform the essential functions

12    of the job, (3) he gave the employer notice of the disability and its substantial

13    limitations, and (4) upon notice, his employer failed to affirmatively adopt available

14    measures that were medically necessary to accommodate his disability. *Davis v.*

15    *Microsoft Corp.*, 70 P.3d 126, 131 (Wash. 2003).

16        Defendants do not dispute that Tlatelpa had an impairment meeting the

17    standard or that he was qualified to perform the essential functions of his job. ECF

18    No. 122 at 16–17; ECF No. 135 at 20. As to the third and fourth elements,

19    Defendants contend that Tlatelpa failed to request a reasonable accommodation

20    beyond his assignment to Temporary Alternative Duty. ECF No. 122 at 17; ECF

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT – 24

No. 135 at 20. Defendants assert that the Temporary Alternative Duty complied with the restrictions imposed by Tlatelpa's doctor and that he never requested an additional accommodation. ECF No. 122 at 17; ECF No. 135 at 20.

Tlatelpa first contends that Walmart contacted his doctor to ask that he change his recommendation from refraining from all work from May 25, 2017 through June 1, 2017, to being permitted to work with restrictions. ECF No. 127 at 17; ECF No. 130 at 17. However, Tlatelpa does not identify how, if at all, the altered recommendation failed to incorporate medically-necessary accommodations. That Walmart proposed limitations on Tlatelpa's work to the doctor and the doctor determined Tlatelpa could perform work with those limitations does not show that Walmart failed to affirmatively adopt available measures that were medically necessary to accommodate the injury. *See Davis*, 70 P.3d at 134 ("[R]easonable accommodation . . . envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions." (quoting *Goodman v. Boeing Co.*, 899 P.2d 1265, 1270 (Wash. 1995)); *see also* ECF No. 127-3 (explaining Walmart's process of discussing employment restrictions with doctors).

Tlatelpa next argues that Walmart refused to allow him to leave to seek medical treatment when his injury was causing pain and swelling and later refused

to allow him to attend his medical appointments without assessing penalties in the accountability system. ECF No. 127 at 17; ECF No. 130 at 17. Contrary to Defendants' assertion that Plaintiff Tlatelpa did not request accommodation beyond his assignment to Temporary Alternative Duty, Tlatelpa has presented evidence showing that he asked to take time off to attend medical appointments related to his disability and that Walmart disciplined him for these absences. ECF No. 127-2 at 4–5; ECF No. 127-3 at 48.

Neither party cites to an interpretation of whether refusal to allow an employee permission to miss work to attend medical appointments related to his disability constitutes failure to accommodate. However, at least one case addressing a failure to accommodate claim under California law found that threatening to terminate an employee for attending medically-necessary appointments supported a finding of failure to accommodate. *See Rizzio v. Work World Am., Inc.*, No. 2:14-cv-02225-TLN-DAD, 2015 WL 5601352, at *8 (E.D. Cal. Sept. 22, 2015). Moreover, the parties contest whether the violations assessed against Tlatelpa were actually caused by attending medical appointments or were unrelated to Tlatelpa's injury. *See* ECF No. 136 at 5. As such, there remains a question of material fact as to whether Walmart's alleged interference with Tlatelpa's medical appointments was a failure to affirmatively adopt available measures that were medically

necessary to accommodate the injury and summary judgment on this claim is not appropriate.

## CONCLUSION

Because genuine disputes of material fact exist with regard to Plaintiffs' claims for disability discrimination and wrongful termination in violation of the IIA, and concerning Plaintiff Tlatelpa's failure to accommodate claim, summary judgment is inappropriate. As such, Plaintiffs' motions for summary judgment are denied and Defendants' motions for summary judgment are denied in part as to these claims.  However, Defendants are entitled to judgment as a matter of law on Plaintiffs' hostile work environment claim and their motions for summary judgment are granted as to these claims.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Based on Plaintiff's stated intent to voluntarily dismiss, the following claims are **DISMISSED WITHOUT PREJUDICE**:

    *A.*    Plaintiff Villanueva's and Plaintiff Tlatelpa's claims under the Family Medical Leave Act and the Washington Family Leave Act, listed in the First Amended Complaint as Count Two; for intentional and negligent infliction of emotional distress, listed as Counts Six and Seven; and for breach of contract, listed as Count Eight; and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT – 27

    **B.**    Plaintiff Villanueva's claim for failure to accommodate, listed in the First Amended Complaint as Count Five.

2.    Defendants' Motion for Summary Judgment on Villanueva's Claims, **ECF No. 120**, and Defendants' Motion for Summary Judgment on Tlatelpa's Claims, **ECF No. 122**, are **GRANTED IN PART** and **DENIED IN PART** as described above.

3.    Plaintiff Martin Villanueva's Motion for Summary Judgment, **ECF No. 126**, and Plaintiff Gabelo Tlatelpa's Motion for Summary Judgment, **ECF No. 127**, are **DENIED**.

4.    Defendants' Motion to Strike Plaintiffs' Replies in Support of Their Motions for Summary Judgment, **ECF No. 160**, is **DENIED AS MOOT**.

5.    Plaintiffs' Motion for Leave Regarding Page Count, **ECF No. 164**, is **DENIED AS MOOT**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 18th day of May 2020.

SALVADOR MENDOZA, JR.
United States District Judge